IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES D. EVANS,                           )
                          Plaintiff       )
                                          )
       vs.                                )       Civil Action No. 07-230J
                                          )
GERALD L. ROZUM, Superintendent;          )       Magistrate Judge Amy Reynolds Hay
JOSEPH VISINKSY, Chief Health Care        )
Administrator; DR. TIMOTHY McGRATH,)
Medical Director; PRISON HEALTH           )
SERVICES, INC.; PENNSYLVANIA              )
DEPARTMENT OF CORRECTIONS;                )
STEVEN M. GATES, Deputy                   )
Superintendent; DANIEL J. GEHLMANN,  )
Major; LT. JOHN DOE; SUE DARR,            )
MAILROOM SUPERVISOR,                      )       Re Dkt. Nos. [49] and [54]
                          Defendants      )


**<u>OPINION</u>**

HAY, Magistrate Judge

       James D. Evans ("Plaintiff") is a state prisoner incarcerated at SCI-Somerset.   The

Second Amended Complaint is the operative complaint.  Dkt. [36].  The operative complaint

named the following Defendants: Gerald Rozum, Superintendent of SCI-Somerset; Joseph

Visinsky, Health Care Administrator; Steven Gates, Deputy Superintendent of SCI-Somerset;

Daniel Gehlman, Major of Security; Lt. John Doe (in charge of RHU on January 13, 2008); Sue

Darr, Mailroom Supervisor; and the Department of Corrections (collectively, "the DOC

Defendants"), as well as Dr. Timothy McGrath, the Medical Director at SCI-Somerset, and

Prison Health Services, Inc. ("PHS"), the private for profit company hired by DOC to provide

health care to the inmates at SCI-Somerset.  The court will refer to Dr. McGrath and PHS as "the

medical defendants."  Plaintiff has named all of the natural person defendants in both their

individual and official capacities.

Plaintiff alleges that he is a paraplegic, who is disabled and requires a wheelchair for mobility. From March 2000 to February 6, 2006, Plaintiff was serving time in SCI-Somerset and on February 6, 2006 he was paroled. From sometime in 2003 to February 6, 2006, Defendants Rozum, Visinsky, McGrath, PHS, and DOC granted Plaintiff's accommodation request to shower in the Medical Unit whenever he was placed the Restricted Housing Unit ("RHU") due to the inaccessibility of the showers in the RHU.

On June 8, 2006, Plaintiff was returned to prison to serve a technical parole violation. On August 16, 2007, Plaintiff was placed in SCI-Somerset's RHU for 60 days for a disciplinary infraction. On August 16, 2007, Plaintiff filed an accommodation request pursuant to DC-ADM 006, asking to shower in the Medical Unit since the RHU showers were not accessible and to have his medically approved wash basin because Plaintiff cannot shower without it due to spasms of his legs. Apparently, the wash basin is placed over Plaintiff's feet to prevent injury because when water hits the legs, they spasm. On August 22, 2007, Defendant Visinsky denied the accommodation request to the extent of Plaintiff's request to shower in the Medical Unit, finding that the RHU showers were accessible. Although Visinsky had requested the shower basin, the security department prohibited it.

At some point, Plaintiff filed grievance No. 197929, requesting to shower in the Medical Unit. Defendant Visinsky answered the grievance, denying it and stating Plaintiff had previously used the showers in the RHU. Plaintiff denies that he used the RHU showers in the past and he contends that during prior times in the RHU, specifically from June 24, 2007 to August 7, 2007, he used the sink in his cell to wash up. Plaintiff complains that Defendants Rozum, Visinsky, PHS, DOC and McGrath denied Plaintiff a shower and an accommodation for 60 days. Plaintiff claims to have contracted a urinary tract infection as a result of being denied the shower

2

accommodation.

While in SCI-Somerset's RHU, Plaintiff used the green soap provided by the DOC to indigent inmates. Plaintiff asserts that because of the soap's content and because of his inability to completely and quickly rinse off the soap when using the sink rather than the shower, Plaintiff's skin suffered burns, cracking and severe dryness. Plaintiff complains that he has no choice but to use this green soap since he is indigent and since his request to the Medical Unit for a different soap was denied.

Plaintiff also alleges that he was retaliated against by several of the Defendants. In retaliation for filing grievances and DC-ADM 006 request for Accommodations concerning the foregoing, Defendants Visinsky, McGrath, PHS and Rozum denied him the following: (a) repair of his personal wheelchair; (b) an egg crate mattress; (c) an ankle foot orthotic (AFO) brace for his right leg; (d) leather full finger wheelchair gloves; and (e) a catheter foley leg strap with locking tabs.

Plaintiff further asserts that Defendant McGrath approved an egg crate mattress in August 2006, but Plaintiff never received one; Defendant McGrath approved an AFO in August 2006, but Plaintiff was not fitted for one until October 2007, and did not receive the AFO brace until December 2007. Defendant McGrath approved a foley catheter leg strap in August 2006, but Plaintiff did not receive one until November 2007, some 15 months later and as a result of the delay, Plaintiff suffered injuries.

Plaintiff also claims that Defendants Visinsky, PHS and Rozum lied to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") concerning Grievance No. 191125 when they told SOIGA that Plaintiff's wheelchair had been repaired when it had only received two new leg rests. Plaintiff asserts that these Defendants denied the other needed repairs in order to save

money and to retaliate against him.

Plaintiff also alleges that he was denied full fingered leather gloves which are needed to protect his hands when he operates his wheelchair in the inclement weather, even though the Defendants had agreed to provide him with cloth ones; Plaintiff complained that the cloth gloves provided inadequate protection. Plaintiff claims he was denied the full fingered leather gloves notwithstanding that through a prior lawsuit filed in this court in or about 1996, Plaintiff was approved by the state Attorney General's office to be permitted to have full fingered leather gloves. Plaintiff further contends that this fact was memorialized with a note in his permanent file. Plaintiff complains that Defendants DOC, Visinsky, Rozum, McGrath, and PHS have denied the full fingered leather gloves and not only denied him the leather gloves but Defendant Visinsky never provided him with the cloth gloves.

Plaintiff also asserts that Defendants Visinsky, PHS and McGrath have not returned Plaintiff's personal wheelchair (Model Traxer SXR) after having it sent it out for repairs on December 5, 2007. Plaintiff is presently using a loaner wheelchair.

Plaintiff next complains that Defendants Rozum, Visinsky, DOC and PHS did not comply with the provisions of DC-ADM 006 concerning requests for accommodations because the requests did not proceed through proper channels. This allegedly denied Plaintiff due process of law.

On October 14, 2007, Plaintiff was released from the RHU and placed back in general population. On November 2, 2007, Plaintiff met with Dr. McGrath who informed Plaintiff that he could not have an egg crate mattress because DOC was confiscating them as they were a potential source of MRSA[1] and could not be properly sanitized. Further, McGrath told Plaintiff

_____

[1] MRSA stands for "methicillin resistant Staph aureus" which is a type of infectious germ.

the he could have an extra regular mattress instead. Plaintiff refused the extra mattress. McGrath also explained that the full finger leather gloves were denied by security. Plaintiff alleges that Defendant McGrath lied about DOC's recall of egg crate mattresses given that the Final Response to Grievance No. 206386 indicated that the reason for the denial was not that such egg crate mattresses were banned but that it was determined that there is no medical need for Plaintiff to have an egg crate mattress.

On January 13, 2008, Plaintiff was placed back in the RHU for disciplinary infraction and apparently remained there until October 2008, for misconducts. After being placed in the RHU, when Plaintiff requested his bowel medical supplies to do his bowel program,[2] medical personnel were called. The medical personnel gave Plaintiff what he asserts are insufficient quantities of supplies. As a consequence, Plaintiff claims he had to use his bare finger and spit in order to attempt to extract feces from his rectum, which caused pain and emotional suffering. He alleges that Defendants Doe, Rozum, PHS, DOC, Gates, Gehlman and Dr. McGRath were all involved in denying him all of the necessary bowel program supplies.

On January 14, 2008, Plaintiff filed an emergency request to staff , Dkt. [36] at 39, claiming retaliation in the denial of his bowel program supplies for the filing of the instant lawsuit.

On January 17, 2008, Plaintiff was given what he asserts were the proper quantities of supplies for his bowel program. Accordingly, Plaintiff alleges he was without his complete bowel program supplies and unable to do his bowel program properly for 141 hours or six days.

---

[2] Due to Plaintiff's paraplegia, he is unable to defecate in the usual manner and instead must perform a bowel program involving him lying down on a bed and using an enema, gloves, lubricant, chux pads (which are pads that prevent any accidental seepage from soiling the bed or wheelchair seat) and him manually removing feces from his body.

Plaintiff claims that Defendants Rozum, Visinsky, McGrath, PHS, DOC, Gates, Gehlman and Lt. Doe all blocked this necessary treatment on their whim. Plaintiff also claims that this denial of the bowel program supplies was in direct retaliation and attempted coercion by the Defendants Rozum, Visinsky, PHS, DOC, Gates, McGrath, Lt. Doe and Gehlman, who were aware of this lawsuit.

Plaintiff's legal claims are that the foregoing violated his right to be free of deliberate indifference and violated his rights under the First, Fifth and Fourteenth Amendments, as well as under the ADA and the Rehabilitation Act. Plaintiff also makes reference to state law claims, invoking this court's supplemental jurisdiction, alleging violations of the state constitution and state common law. In addition, Plaintiff baldly alleges a civil RICO violation against the Defendants.

By way of relief, Plaintiff seeks, injunctive relief, requiring the Defendants to

1) provide plaintiff with accessible showers whenever he is placed in the RHU
2) provide plaintiff with full fingered leather gloves
3) provide plaintiff with an egg crate mattress
4) return Plaintiff's personal wheelchair to him
5) stop retaliating against him
6) provide plaintiff with different soap

Plaintiff also seeks compensatory and punitive damages as well as attorney's fees.

The Medical Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted, Dkt. [49], and a supplemental motion to dismiss, Dkt. [54]. Plaintiff has filed a brief in opposition to the Medical Defendants' motion and supplemental motion to dismiss. Dkt. [80].[3] The motion to dismiss and the supplemental motion to dismiss are now

---

[3] Plaintiff's brief in opposition to the Medical Defendants' motion to dismiss was originally docketed at Dkt. [58], however, the Court discovered that when the Clerk's office scanned the original brief into the computerized docket, there were pages missing on the scanned document which were contained in the original brief and so the Court directed the Clerk's office to re-scan the entire original brief, and hence,

ripe.

## A. Applicable Legal Principles

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA in relevant part amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, to provide that "[t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1). Given Congress' use of the mandatory word "shall," courts are required under Section 1997e to review complaints and dismiss an action sua sponte if it fails to state a claim upon which relief can be granted. Nieves v. Dragovich, No. 96-6525, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted."), aff'd, 175 F.3d 1011 (3d Cir. 1999)(Table). Hence, the mere filing of a motion to dismiss by the defendants in an action does not necessarily relieve the court of its mandatory obligation under Section 1997e to review the complaint and dismiss it if any of the statutory bases exist. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir.

---

the re-scanned document received Dkt. No. [80].

7

2000); <u>Dare v. U.S.</u>, CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), <u>aff'd</u>,

264 Fed.Appx. 183 (3d Cir. 2008).   Hence, if there is a ground for dismissal which was not

relied upon by the defendants in a motion to dismiss, the court may nonetheless sua sponte rest

its dismissal upon such ground pursuant to the screening provisions of the PLRA.   <u>See</u> <u>Lopez</u>;

<u>Dare</u>.

At the time of the filing of the instant complaint, Plaintiff was a "prisoner" within the

meaning of Section 1997e.[4]   The rule is that if at the time of the filing of the complaint the

plaintiff is a prisoner, then the PLRA is applicable.   <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307,

314 (3d Cir. 2001);   <u>In re Smith</u>, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner

on the day he files a civil action, the PLRA applies.").   In addition, it is indisputable that

Plaintiff's suit concerns "prison conditions" within the meaning of Section 1997e(c)(1).   <u>Porter v.</u>

<u>Nussle</u>, 534 U.S. 516, 532 (2002).   Hence, the screening provisions of Section 1997e are

applicable herein.

In addition, the PLRA significantly amended the statutory provisions governing prisoners

who are proceeding in forma pauperis.   The amended version of the statute now reads that

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner

granted IFP status], the court shall dismiss the case at any time if the court determines that–   (A)

the allegation of poverty is untrue;   or   (B) the action or appeal–   (i) is frivolous or malicious;   (ii)

fails to state a claim on which relief may be granted;   or   (iii) seeks monetary relief against a

defendant who is immune from such relief."   28 U.S.C. §1915(e)(2).   Here, Plaintiff has been

---

[4] 42 U.S.C. § 1997e(h) provides that "[a]s used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

granted IFP status, Dkt. [7], and is a prisoner within the meaning of 28 U.S.C. §1915.[5] Thus, Section 1915(e)(2) is also applicable herein.

Moreover, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e). See, e.g., Grayson v. Mayview State Hospital, 293 F.3d 103, 110 n.12 (3d Cir. 2002); Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."). Hence, the filing of a motion to dismiss by a defendant does not relieve the court of its obligation to otherwise dismiss a complaint under Section 1997e even if based upon an issue not raised in the motion to dismiss. Lopez v. Smith, 203 F.3d at 1126-27; Dare v. U.S., 2007 WL 1811198.

In performing the court's mandated function of sua sponte review of a complaint under 28 U.S.C. § 1915(e) and/or 42 U.S.C. § 1997e to determine if the complaint fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), aff'd, 116 F.3d 473 (4th Cir. 1997) (Table).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e and

---

[5] The term prisoner as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h)

in applying the standards under a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true.  See  Estelle v. Gamble, 429 U.S. 97 (1976).   In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  Because the court can take judicial notice of facts in adjudicating a motion to dismiss under 12(b)(6), and the standards under 12(b)(6) and under the PLRA are the same regarding complaints that fail to state a claim, the court may likewise take judicial notice of facts in its sua sponte screening of complaints under the PLRA.  Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999). Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519 (1972).

The standard applicable to motions to dismiss under Fed.R.Civ.P. 12(b)(6) and, hence, under the PLRA screening provisions, is not the standard which the parties indicate, i.e., if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations then the complaint should be dismissed for failure to state a claim.  Dkt. [50] at 4; Dkt. [80] at 1.  Rather, as recently explained by the Court of Appeals:

> In Twombly, an antitrust case, the Supreme Court rejected the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a district court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In rejecting that language, the Supreme Court explained that the allegations of the complaint should "plausibly suggest[ ]" that the pleader is entitled to relief. In Phillips, a case brought under 42 U.S.C. § 1983, we held that Twombly's "plausibility" standard is not restricted to antitrust cases. 515 F.3d at 234. Although we

commented that the exact boundaries of Twombly are not yet known, we read it to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (quoting Twombly, 127 S.Ct. at 1965). Put another way, "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (quoting Twombly, 127 S.Ct. at 1965). The complaint must state " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. (quoting Twombly, 127 S.Ct. at 1965). "That is to say, there must be some showing sufficient to justify moving the case beyond the pleading to the next stage of litigation." Id. at 234-35.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 173 n.7 (3d Cir. 2008). With the plausibility standard in mind, we review the complaint and its attachments, together with the other relevant filings, i.e., the Defendants' motion to dismiss and the Plaintiff's brief in opposition.

**B. Discussion**

**1. Fifth Amendment**

Plaintiff invokes the Fifth Amendment. Dkt. [36] at 5, ¶ 27. However, Plaintiff has no Fifth Amendment claim. In the first instance, the Fifth Amendment applies solely to federal government actors, not state government actors and, hence, all Fifth Amendment claims are properly dismissed. Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158 (1896)("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided."); Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials.").

Additionally, to the extent that the Plaintiff is attempting to make a Fifth Amendment "takings clause" claim, we note the following. The Fifth Amendment provides that "nor shall private property be taken for public use [by the federal government] without just compensation."

The Fifth Amendment's takings clause has been held to apply to the states via the doctrine of selective incorporation into the Fourteenth Amendment's substantive due process clause. Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001)("The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.")(citation omitted); Miles v. Township of Barnegat, C.A. No. 05-1661, 2008 WL 89910, at *5 n.7 (D.N.J. Jan. 7, 2008).

The operative complaint itself does not appear to contain a takings clause claim. See, e.g., Dkt. [36] at 23, ¶ 72. However, in his brief in opposition to the instant motions, Plaintiff makes clear that he is attempting to allege a takings clause claim. Dkt. [80] at 17, ¶ H.2. The rule, however, is that "[f]or the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading." Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002) Accord Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). This is true, notwithstanding the fact that Plaintiff is pro se. See, e.g., McArdle v. Tronetti, 961 F.2d 1083, 1089 (3d Cir. 1992)(applying rule of Zimmerman v. PepsiCo. but the pro se litigant there was an attorney); Martin v. Zook, 1988 WL 33919, (E.D.Pa. March 31, 1988)(applying rule of Zimmerman v. PepsiCo. to pro se lay plaintiff).

Even if, however, Plaintiff could amend the operative complaint by having this court consider the takings clause allegation in the brief in opposition, the claim would not survive. In his brief, Plaintiff alleges that "[the Medical Defendants have refused to return plaintiff's personal wheelchair, i.e., (model Tracer SXR), which they allegedly sent out for repair in

December 2007. Thereby converting it [and] depriving him of its use [and]/or utilizing it for public use without just compensation." Dkt. [80], at 17, ¶ H.2. To the extent that Plaintiff is attempting to make a takings clause claim by this allegation, he fails to state a claim under Twombly. As the court in Twombly explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" 127 S.Ct. at 1964-65. Here, this is all that Plaintiff provides and such fails to state a claim under Twombly. The takings clause claim is simply not plausible within the meaning of Twombly.[6]

## 2. Deliberate Indifference Claim

Plaintiff makes an Eighth Amendment/Fourteenth Amendment[7] claim of deliberate

---

[6] Insofar as Plaintiff makes claims of procedural due process violations, those alleged violations are properly considered under the Fourteenth Amendment and not under the Fifth Amendment, given that all of the Defendants are alleged to act under color of State law and the Fifth Amendment does not address itself to action under state law.

[7] Technically, the protections afforded by the Eighth Amendment against Federal governmental interference are applied against the states through the substantive component of the Fourteenth Amendment due process clause. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)); Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing Robinson v. California). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). As explained by one court:

> the Supreme Court has held that the prohibition against cruel and unusual punishment is "incorporated" into the Fourteenth Amendment's proscription of state deprivations of liberty without due process of law. Although the analytical basis for the "incorporation doctrine" has not been precisely articulated, the result which it establishes in this case is clear: freedom from cruel and unusual punishment is one aspect of the "liberty" recognized by the Due Process Clause, and this freedom is entitled to an identical degree of substantive protection from state infringement as that which applies to federal infringements under the Eighth Amendment.

United States ex rel. Hoss v. Cuyler, 452 F. Supp. 256, 281 (E.D. Pa. 1978)(footnote omitted). In light of the foregoing, Plaintiff's complaint makes a claim of only one constitutional provision being violated, i.e., the Fourteenth Amendment's substantive due process protections which incorporate the Eighth

indifference under Section 1983 against the Medical Defendants. Plaintiff claims that prior to August 2007, the Defendants PHS and McGrath delayed acquiring an AFO leg brace, a catheter strap, and an egg crate mattress for the purpose of saving money. Essentially, Plaintiff's complaint implies that the moving defendants hoped that Plaintiff would be paroled and therefore they would not have to expend monies to acquire the items. This is sufficient at this stage in the litigation to state a claim of deliberate indifference. Bramson v. Sulayman, 251 Fed.Appx. 84, 86 (3d Cir. 2007)("It is true that a delay in rendering necessary medical care for non-medical reasons can constitute deliberate indifference under certain circumstances.")(citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)). Similarly, Plaintiff claims that the Medical Defendants permitted the denial of his bowel program supplies for non-medical reasons. Plaintiff implies that had the medical defendants acted, such denial would not have occurred. Dkt. [36] at 15, ¶ 55. Again such allegations are sufficient to show deliberate indifference at this time. Additionally, claims that the Defendants are knowingly requiring Plaintiff to use green soap which is caustic is sufficient at this stage to state a claim of deliberate indifference.

In this vein, PHS argues that it cannot be liable under Section 1983 unless Plaintiff alleges a policy which caused him harm and Plaintiff fails to do so. It appears, however, that Plaintiff does, in fact, allege that the existence of a policy or custom or practice of PHS to abdicate its responsibility to provide medical treatment when such conflicts with security concerns. See Dkt. [36] at 15, ¶ 56. This allegation is sufficient at this stage of the litigation.

### 3. ADA and Rehabilitation Act Claims

---

Amendment **standards** barring cruel and unusual punishment. Any claims directly under the Eighth Amendment fail to state a claim since all defendants act under color of state law, not federal law. The court will refer to the denial of medical treatment and equipment claims as the "deliberate indifference claims."

Plaintiff makes essentially two claims under the ADA.  First, he makes a claim under Title II of the ADA[8] that essentially alleges discrimination against him or denial of participation (hereinafter simply "discrimination")  on the basis of his disability, i.e., he was denied accessible showers, medical devices, equipment and treatment.  Second, he claims that the Defendants violated the Title V of the ADA,[9] which  prohibits coercion and/or retaliation for exercising rights under the ADA.

### a. ADA and Rehabilitation Act have no cause of action for failure to treat

Plaintiff's complaint about being denied his medical supplies and an accessible shower

---

[8]    Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.A. § 12132.

[9]  Title V of the ADA provides as follows:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203.

does not state a claim under Title II of the ADA as a matter of law. Plaintiff's claims herein are similar to the claims of plaintiff-inmate Ronald Bryant in the case of <u>Bryant v. Madigan</u>, 84 F.3d 246, 248 (7th Cir. 1996). Inmate Bryant, like Plaintiff was paraplegic and disabled. Inmate Bryant, like Plaintiff requested an accommodation of his paraplegia. However, rather than accessible showers, Inmate Bryant requested an accommodation of having guardrails installed on his bed. The prison officials denied him such and consequently, he fell out of bed when he suffered a severe leg spasm and broke his leg. Inmate Bryant also complained that after the operation which fixed his broken leg, he was denied necessary treatment including medicine for his pain. He brought suit under Title II of the ADA. The Court of Appeals for the Seventh Circuit, speaking through the eminent Judge Posner, rejected the claim and reasoned as follows:

> the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation. Unlike the prisoner plaintiffs in <u>Love v. McBride</u>, 896 F.Supp. 808 (N.D.Ind.1995), or <u>Donnell v. Illinois State Bd. of Education</u>, 829 F.Supp. 1016, 1020 (N.D.Ill.1993), he is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.
>
> Standards of medical care are not irrelevant to the statute. Disabled people often cannot participate in programs and activities unless special attention is given to their medical needs. But incarceration, which requires the provision of a place to sleep, is not a "program" or "activity." Sleeping in one's cell is not a "program" or "activity." Even apart from the prison setting it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the Americans With Disabilities Act, whereas a sick or injured but not disabled person-a person suffering from an acute viral infection, perhaps, or who has broken his leg, or who has a hernia or an inflamed gall bladder-must be content with the remedy that the state law of medical malpractice provides. Moreover, the courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the Americans With Disabilities Act.

<u>Id</u>.

Similarly here, showering, defecating, etc., is no more a program or activity than is sleeping. Denial of his bowel program supplies, his AFO brace, his catheter strap, etc., while arguably constituting a denial of treatment in violation of the Eighth Amendment standards incorporated into the Fourteenth Amendment, does not constitute a violation of Title II of the ADA as a matter of law. The rule announced in <u>Bryant</u> has been applied by the Court of Appeals for the Third Circuit. <u>Iseley v. Beard</u>, 200 Fed.Appx. 137, 142 (3d Cir. 2006)("Iseley's argument that the denial of treatment for his ailments violated the ADA fails as well. The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. A claim under the ADA requires that: (1) the plaintiff has a disability; (2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program, and (3) the plaintiff was excluded from the program solely by reason of his or her disability. <u>See</u> <u>Wagner v. Fair Acres Geriatric Center</u>, 49 F.3d 1002, 1009 (3d Cir.1995). Iseley does not claim that he was excluded from any program on the basis of his disability. Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.") (citing <u>Bryant</u>, approvingly).

This same reasoning applies equally to Plaintiff's claims of discrimination under the Rehabilitation Act. <u>Fitzgerald v. Corrections Corp. of America</u>, 403 F.3d 1134, 1144 (10th Cir. 2005), wherein the court held as follows:

> Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("ADA does not create remedy for medical malpractice"); *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 121, 123 (7th Cir. 1997) (affirming district court's dismissal under Fed.R.Civ. P. 12(b)(6) of plaintiff's section 504 claim because "section 504 [which 'is materially identical to the ADA'] does not provide a federal malpractice tort remedy" and allegations of discriminatory medical treatment do not fit into the

four-element framework required by Section 504.).

　　In the instant case, the principal basis for Fitzgerald's claim against Dr. Josephson is the doctor's recommendation that the prison may "do nothing" as an acceptable course of treatment for Fitzgerald's injuries. Dr. Josephson suggested the non-treatment option as one option, but also recommended surgery as another option. He did not make the final decision to deny treatment. Even if Dr. Josephson had been the final decision-maker, Fitzgerald would not have been "otherwise qualified" for such treatment in the absence of his alleged disability-his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act. Fitzgerald's claims against Dr. Josephson under the ADA and Rehabilitation Acts were therefore properly rejected on the merits under § 1997e(c)(2).

　　Hence, all Title II ADA claims and discrimination claims under the Rehabilitation Act are properly dismissed against the Medical Defendants.  In addition, pursuant to the PLRA, all such claims are properly dismissed against all DOC defendants as well for failure to state a claim upon which relief can be granted.

### b. Retaliation Claims under the ADA and the Rehabilitation Act

　　In contrast to discrimination claims under Title II of the ADA or under the Rehabilitation Act, claims for retaliation and/or coercion under both of the Acts are viable against natural person individuals and this is true even if denial of treatment does not state a claim under the anti-discrimination provisions of the ADA and Rehabilitation Act.  See  Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 n.5 (3d Cir. 2007) ("The anti-retaliation regulation implementing section 504 states: No recipient **or other person** shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing....") (quoting 34 C.F.R. 100.7(e)) (emphasis added)).  Merely because such individual defendants cannot be liable under Title II of the ADA or the anti-discrimination provisions of Section 504 of the Rehabilitation Act, it does

not follow that such individual cannot be liable under any other provisions.  Indeed, the law is to

the contrary, and individuals may be held liable under the anti-retaliation/anti-coercion provision

under those Acts.  Thomas v. Pennsylvania Dep't of Corr.,  NO. CIV.A. 07-40J,  2008 WL

68628, at *5 (W.D.Pa. Jan. 4, 2008) ("individual capacity suits under the provisions of the ADA

and the Rehabilitation Act relating to retaliation/coercion claims are permitted.")(collecting

cases).

      Moreover, the Medical Defendants' arguments that Plaintiff failed to allege any adverse

consequence [i.e., a necessary element of a retaliation claim] from his one interaction with Dr.

McGrath, misses the point.   Dkt. [50] at 6-7.  It is not necessary for a retaliation claim to allege

an adverse consequence from "an interaction" with a Defendant.  Rather, it is sufficient to claim

that Plaintiff exercised his rights under the ADA, and/or Rehabilitation Act and/or under the

Constitution and that he suffered an adverse consequence that was caused by the Defendant.

Lauren W. ex rel. Jean W. v. Deflaminis,  480 F.3d at 267.  Here, Plaintiff's complaint alleges

such.  He alleges that he filed grievances,[10] he filed requests for accommodations as well as this

civil action and that as a result, the Medical Defendants took actions against him by denying him

treatment.  This is sufficient.  Hence, the retaliation claims under the ADA and the Rehabilitation

Act remain.  Any such retaliation claims made pursuant to Section 1983 on a First Amendment

violation also remain.  See id. (noting the prima facie case under the First Amendment and under

the Rehabilitation Act are the same).

### 4. Procedural due process claims

---

[10]  Contrary to Plaintiff's contentions, a prisoner is required to exhaust his administrative remedies even
for ADA and Rehabilitation Act claims.  O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056 (9th
Cir. 2007); Devenshire v. Beard, NO. CIV.A. 07-125, 2008 WL 2779071, at *3 (W.D.Pa. May 22, 2008).

Plaintiff makes claims under the procedural due process clause of the Fourteenth Amendment. The claims appear to be based upon several factual situations: (1) taking of his personal wheelchair, (2) taking/loss of his legal mail and (3) and the failure of the DOC Defendants to follow the procedures outlined in policies promulgated by DOC for the processing of requests for accommodations.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty/property interest and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

The first two claims, alleging the taking of Plaintiff's property without due process, fail to state a claim as a matter of law because the general rule is that where the state affords a post-deprivation procedure to an inmate, such satisfies the procedural due process requirements of the Fourteenth Amendment. Payton v. Horn, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999) ("Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.")(citations omitted), overruled on other grounds, Ray v. Kertes, 285 F.3d 287 (3d Cir.2002); Reid v. Seville, No. CIV. A. 96-2577, 1996 WL 421901, at *3 (E.D.Pa. July 19, 1996)(same); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Robinson v. Ridge, 996 F.Supp. 447, 450 n. 4 (E.D. Pa. 1997)(DOC grievance procedure constituted an adequate post deprivation procedure and hence no procedural due process claim was able to be made), aff'd, 175 F.3d 1011 (3d Cir. 1999) (Table); Rogers v. Mrs. Brown, No. Civ. A. 95-7867, 1996 WL 608473, at *2 (E.D. Pa.

Oct. 24, 1996) (both DOC grievance procedure and tort suit in state court may provide adequate post deprivation remedies).  Hence, assuming Plaintiff had a protected property interest in the items, given that Plaintiff had access to state post-deprivation remedies, he cannot make out a claim that he was denied procedural due process.

As to the failure of the Defendants to follow the procedures outlined in DOC policies for addressing accommodation requests, such fails to state a claim of procedural due process because the procedures set up by the DOC do not endow Plaintiff with a liberty or property interest under the Fourteenth Amendment, requiring that DOC abide by its own procedures.   The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest of an individual;  it cannot be the right to demand needless formality.  Process is not an end in itself.   Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . .   The State may choose to require procedures for reasons other than protection against deprivation of substantive  rights, of course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (internal quotations, citations and footnotes omitted).  See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.") (quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1ˢᵗ Cir. 1977)); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7ᵗʰ Cir. 1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, at *7 (E.D. Pa.  Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process

merely by deviating from its own established procedures."). Having been deprived of no liberty interest by the Defendants' failure to abide by DOC policies, the complaint fails to state a procedural due process claim.

### 5. First Amendment

It is not entirely clear, but Plaintiff may be attempting to make a First Amendment access to courts claim under the facts alleged concerning the loss of his legal mail. Dkt. [36] at 20, ¶ 68. To the extent that he is, such a First Amendment claim of access to court fails as a matter of law because he has failed to allege any injury. The lost legal mail concerns this case and Plaintiff has suffered no legal harm to this case by the loss of such. <u>Toussaint v. Good</u>, 276 Fed.Appx. 122, 124 (3d Cir. 2008)("As to Toussaint's First Amendment claim regarding the denial of access to the courts, we agree with the Magistrate Judge's determination that Toussaint alleged no actual injury under *Lewis v. Casey*, 518 U.S. 343, 355 (1996). We note that Toussaint clarified in his objections to the report and recommendation that he was impeded in filing a motion for bail pending appeal in this Court. Yet Toussaint still alleged no specific facts regarding this alleged harm; he provided no case numbers, dates of attempted filing, or details describing how his litigation was affected.").

### 6. RICO Claims

In order to state a RICO claim, a plaintiff has two pleading burdens:

[f]irst, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 . . ., the substantive RICO statute. Specifically, it must be alleged: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. S 1962(a)-(c) (1976). <u>Moss</u>, 719 F.2d at 17. The plaintiff's second 'pleading burden' is to allege that he was ' injured in his business or property by reason of a violation of section 1962.' Id. (quoting 18 U.S.C. § 1964(c)).

Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990). See also Lighting Lube, Inc. v. Witco Group, Inc., 4 F.3d 1153, 1187 (3d Cir. 1993)("In order to recover under section 1964(c) a plaintiff must plead (1) a section 1962 violation and (2) an injury to business or property by reason of such violation.").

The operative complaint is devoid of any allegations of any pattern of racketeering activity. Plaintiff's only claim is that his personal wheelchair was taken in December 2007 for repairs and that it has not yet been returned to him, although he does have use of a loaner wheelchair. We find this allegation to be insufficient under Twombly to state a RICO claim. Twombly, 127 S.Ct. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Here, this is all that Plaintiff provides and such fails to state a claim under Twombly. The RICO claim is simply not plausible within the meaning of Twombly.

### 7. State Law Claims

Plaintiff asserts that he is making state law claims against all the Defendants. However, he affirmatively disavows that he is making any medical malpractice action. Dkt. [80] at 12 to 13, ¶ 2. Accordingly, the only state law claims apparent from the operative complaint are a claim for intentional infliction of emotional distress ("IIED") and a claim for violations of the Pennsylvania Constitution.

The IIED claim fails to state a claim against all of the DOC defendants and is properly dismissed against them. Plaintiff alleged that the actions of the Defendants amounted to the state law torts of intentional infliction of emotional distress. These state law claims are barred by the state statute providing immunity to employees of the Commonwealth of Pennsylvania. See, e.g.,

Holt v. Northewst Pa. Training Pshp. Consortium, 694 A.2d 1134, 1139-40 n.  (Pa. Cmwlth. 1997)("In order to maintain an action against a commonwealth party or a local agency, a plaintiff must establish that he or she has a statutory cause of action or that it was one maintainable at common law.  At common law, the tort of intentional infliction of emotional distress, which Holt has alleged against the Commonwealth defendants, the NPTPC and the Commissioners, did not exist.")(citations omitted); id. at 1140 ("sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress.").

PHS and Dr. McGrath have not shown that the operative complaint fails to state a claim of IIED against them.

The parties have not shown that the complaint fails to state a claim against them under the Pennsylvania Constitution, nor have they convinced the court that the complaint fails to state a claim for punitive damages.

Plaintiff, as a pro se, non-lawyer litigator is not entitled to attorney fees.  Kay v. Ehrler, 499 U.S. 432, 435 (1991)(noting that "[t]he Circuits are in agreement, however, on the proposition that a pro se litigant who is not a lawyer is not entitled to attorney's fees").  Hence the claim for attorney's fees is stricken.

In summary, the Medical Defendants' motion to dismiss and supplemental motion to dismiss are granted in part and denied in part.   They are granted as to all Fifth Amendment claims, all discrimination claims under the ADA and Rehabilitation Act, all procedural due process claims, all takings clause claims, as to the First Amendment access to courts claims and as to all RICO claims.  The motions are denied as to all deliberate indifference claims and as to all retaliation claims under the ADA, the Rehabilitation Act and the First Amendment.  In

addition, pursuant to the PLRA screening provisions, all discrimination claims under the ADA and the Rehabilitation Act are dismissed against all of the DOC defendants, as are all Fifth Amendment claims and the state law claims of intentional infliction of emotional distress.

Accordingly, the only remaining claims in this case are: (1) two Section 1983 claims for (a) deliberate indifference against all defendants and (b) retaliation under the First Amendment; (2) ADA retaliation claims against all defendants; (3) Rehabilitation Act retaliation claims against all Defendants;  (4) state constitutional law claims against all defendants; (5) a claim for punitive damages against all defendants ; and (6) a state law claim of IIED against PHS and Dr. McGrath.

An appropriate Order follows.


_/s/ Amy Reynolds Hay_____
_____United States Magistrate Judge

Dated:  20 November, 2008

cc:      James D. Evans
         ET-4625
         SCI Somerset
         1600 Walters Mill road
         Somerset, PA 15510

         All counsel of record via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES D. EVANS, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-230J |
| | ) | |
| GERALD L. ROZUM, Superintendent; | ) | Magistrate Judge Amy Reynolds Hay |
| JOSEPH VISINKSY, Chief Health Care | ) | |
| Administrator; DR. TIMOTHY McGRATH; | ) | |
| Medical Director; PRISON HEALTH | ) | |
| SERVICES, INC.; PENNSYLVANIA | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| STEVEN M. GATES, Deputy | ) | |
| Superintendent; DANIEL J. GEHLMANN, | ) | |
| Major; LT. JOHN DOE; SUE DARR, | ) | |
| MAILROOM SUPERVISOR, | ) | Re Dkt. Nos. [49] and [54] |
| Defendants | ) | |

## **ORDER**

AND NOW, this 24th day of November, 2008, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Medical Defendants' motion to dismiss and supplemental motion to dismiss, Dkt. Nos. [49] and [54], are granted in part and denied in part. They are GRANTED as to all Fifth Amendment claims, all discrimination claims under the ADA and Rehabilitation Act, all procedural due process claims, all takings clause claims, as to the First Amendment access to courts claims and as to all RICO claims. The motions are DENIED as to all deliberate indifference claims and as to all retaliation claims under the ADA, the Rehabilitation Act and the First Amendment.

IT IS FURTHER ORDERED that, pursuant to the PLRA screening provisions, all discrimination claims under the ADA and the Rehabilitation Act are DISMISSED against all of the DOC defendants, as are all Fifth Amendment claims and the state law claims of intentional infliction of emotional distress.

_/s/ Amy Reynolds Hay_
United States Magistrate Judge

cc:    James D. Evans
ET-4625
SCI Somerset
1600 Walters Mill road
Somerset, PA 15510

All counsel of record via CM-ECF